UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN ELLING and IG ASSETS, INC., ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> BRADLEY HAUCK and ) <br> DEWITT, ROSS & STEVENS, S.C., ) <br> ) <br> Defendants. ) | Case No. 13-cv-8031 <br><br> Judge John W. Darrah |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs, John Elling and IG Assets, Inc., filed suit against Defendants, Bradley Hauck and DeWitt, Ross & Stevens, S.C. ("DeWitt"), on November 8, 2013.[1] In their Complaint, Plaintiffs allege a claim of negligence against Hauck and a claim of *respondeat superior* against DeWitt. Defendants filed a Motion for Summary Judgment [48] pursuant to Federal Rule of Civil Procedure 56. Defendants' Motion [48] is granted.

## **LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* Local Rule 56.1(b)(3)(C) permits the nonmovant to submit "any additional facts that require the denial of

---

[1] The other named Defendants, Nathaniel MacPherson and the MacPherson Group moved to transfer the claims against them to the U.S. District Court of the District of Arizona, which was granted on August 21, 2014.

summary judgment . . . ." To overcome summary judgment, "the nonmoving party must file a response to each numbered paragraph in the moving party's statement." *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. *Id.* A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). If the nonmovant's response only provides extraneous or argumentative information, the response will fail to constitute a proper denial of the fact, and the fact will be admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Legal conclusions or otherwise unsupported statements, including those that rely upon inadmissible hearsay, will be disregarded. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *see also Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

## BACKGROUND

The following facts are taken from the parties' statements of material facts submitted in accordance with Local Rule 56.1.

Elling is a resident of New Mexico. (Def's Statement of Facts ("SOF") ¶ 1; Pl's Statement of Additional Facts ("SAF") ¶ 1.) Elling was Chairman of the Board of Directors of Integrated Genomics ("Integrated"), a Delaware corporation which is qualified as a foreign corporation to do business in Illinois. (Pl's SAF ¶¶ 2, 5.) Two individuals affiliated with DEWB, a German entity, were also part of Integrated's Board of Directors and loaned funds to Integrated beginning in 2005. (Pl's SAF ¶¶ 3-4.) Jonathan Sheridan was the CEO of Integrated

during the relevant times. (*Id.* ¶ 2.) DeWitt is a law firm located in Wisconsin. (Def's SOF ¶ 3.) Hauck is an employee of DeWitt and a Wisconsin citizen. (Def's SOF ¶ 2.)

In January 2009, Integrated sought counsel from DeWitt in response to financial difficulties. (Def's SOF ¶ 5; Pl's SAF ¶ 5.) That spring, Integrated's Board of Directors decided to borrow funds from both DEWB and Elling in order to finance their continued operation. (Pl's SAF ¶ 8.) This plan also included obtaining a loan and grant from the State of Wisconsin for Integrated to establish a lab within the state. (*Id.*) In May 2009, Integrated borrowed $100,000 from Elling in the form of a loan, to be paid with interest, and Elling was provided a security interest in Integrated's assets. (Def's SOF ¶ 7.) Elling and DEWB were concerned with securing their interests as superior to those of the State of Wisconsin, should Integrated receive a loan from the state. (Pl's SAF ¶ 11.)

Sheridan asked Hauck to provide legal services relating to the aforementioned loans. (Def's SOF ¶ 11; Pl's SAF ¶ 12.) Hauck worked on documentation regarding the loan from Elling to Integrated, and prepared and filed the financing statements regarding the security interest given by Integrated to Elling. (Def's SOF ¶ 10.) Hauck's point of contact at Integrated was Sheridan, and all communications between Hauck and Integrated occurred through Sheridan. (Def's SOF ¶ 9; Pl's SAF ¶ 14.) Elling never spoke directly with anyone at Dewitt, including, Hauck, regarding these transactions. (Def's SOF ¶ 23.) Instead, Elling spoke with Sheridan regarding his loan to Integrated, and asked Sheridan to forward any documents regarding this loan to Elling. (Pl's SAF ¶ 15.) Hauck prepared notes for the 2009 loans from both Elling and DEWB to Integrated. (*Id.* ¶ 17.) The note included language that would place Elling's security interest on equal footing with a preexisting DEWB loan. (Pl's SAF ¶ 18.)

3

Throughout the time that loan documents were prepared, Elling communicated with Sheridan, who would then convey the information to or request answers from Hauck. (*Id.* ¶ 19.) On at least one occasion, Sheridan forwarded a question from Elling to Hauck via email, and Hauck billed Integrated for answering the question. (*Id.* ¶ 23.) As required by the loan conditions, Hauck filed UCC statements in Wisconsin and Illinois to provide notice of Elling's lien on Integrated's assets. (*Id.* ¶ 25.)

After these events, Integrated defaulted on Elling's loan. (*Id.* ¶ 30.) Elling alleges a claim against the DeWitt Defendants for legal malpractice, and argues that his security interest was never fully perfected, as the UCC financing statements were not filed in Delaware, the place of Integrated's incorporation. (Def's SOF ¶ 31.)

## LEGAL STANDARD

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of establishing that there is no genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). All reasonable inferences are drawn in the light most favorable to the nonmoving party. *Herzog v. Graphic Packaging Intern., Inc.*, 742 F.3d 802, 805 (7th Cir. 2014).

# ANALYSIS

## Choice of Law

In diversity cases, federal courts apply the conflict-of-law rule of the forum state. *Hinc v. Lime-O-Sol Co.,* 382 F.3d 716, 719 (7th Cir. 2004). In Illinois, the Restatement (Second) of Conflict of Laws § 187 applies where a contract contains an express choice of law. *Hall v. Sprint Spectrum L.P.*, 876 N.E.2d 1036, 1041 (Ill. App. Ct. 2007). This section provides, in relevant part:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (1971). Under Section 187, "the parties' choice of law governs unless (1) the chosen State has no substantial relationship to the parties or the transaction or (2) application of the chosen law would be contrary to a fundamental public policy of a State with a materially greater interest in the issue in dispute." *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois*, 568 N.E.2d 9, 14 (Ill. App. Ct. 1990).

The parties agree that Illinois choice-of-law rules apply, but disagree as to the application of the choice-of-law provisions. Section 4.3 of the note provides that "this Note and all the rights and remedies of the holder hereof shall be construed in accordance with and governed by the laws of Illinois." (Elling Aff., Ex. 10, p. 5.) Section 5.3 states:

5

> The Borrower hereby waives presentment and notice of dishonor. No delay by the Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Lender of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Illinois. . . .

(*Id.* at p. 6.)

Elling claims that the forum selection clauses in the note apply to his malpractice claim. He argues that the language of the note is broad, and cites other jurisdictions who have found a legal malpractice claim to be subject to the forum clause of the underlying agreements. Defendants argue that they are not a party to the note and, therefore, are not subject to the forum selection clause contained within it. Instead, Defendants maintain that Wisconsin law applies to the legal malpractice claim in accordance with the Illinois "significant contacts" test.

When sitting in diversity, "the ultimate responsibility of the district courts is to apply the law of the state in which the court sits with respect to substantive matters." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Several Illinois decisions have expressly disallowed the application of forum selection clauses to non-parties. *See Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 665 (2003) ("a choice of law or forum clause in a contract is not applicable to a non-party"); *Jakubik v. Jakubik*, 566 N.E.2d 808, 810 (1991) (holding a non-party to a contract was not bound by its terms). Federal courts have come to the same conclusion. *See Am. Specialty Sys. v. Chicago Metallic Corp.*, No. 01-C-4609, 2002 WL 406965, at *5 (N.D. Ill. 2002) (holding that forum selection clause did not apply because "plaintiff was not a party to any contract . . . and did not agree to the forum selection clause"); *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996) (holding that "[e]ven the strongest language choosing" a particular state's law does not bind non-parties to the contract).

6

Plaintiffs argue that, to determine whether or not the clause applies, there must be a two-part analysis to determine the breadth of the clause. However, the clauses in the contract only apply to parties to the contract. A court must look at "the breadth and language of the contract's choice of law clause to determine *if the parties intended it to govern all claims between them*." *LaSalle Bank Nat'l Ass'n. v. Paramount Props.*, 588 F. Supp. 2d 840, 849 (N.D. Ill. 2008) (quotations and citation omitted). The court must determine whether the tort claims are dependent on the contract. *LaSalle*, 588 F. Supp. 2d at 849. "In deciding whether a tort claim is 'dependent' upon a contract, courts examine whether: (1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the *parties' contractual relationship*; or (3) the tort claim could not exist without the contract." *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006) (emphasis added). The note is a contract between Elling and Integrated. There is no contractual relationship between Plaintiffs and Defendants created by the note.

As the note's choice-of-law provisions do not apply to Defendants, Illinois' standard choice-of-law analysis applies. In Illinois, "a choice-of-law analysis begins by isolating the issue and defining the conflict. A choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893, 898 (Ill. 2007). Illinois and Wisconsin law differ in regards to the rights of parties to recover on a legal malpractice claim. In 1982, the Illinois Supreme Court abolished the privity requirement in a legal malpractice cause of action, allowing the plaintiff to "allege and prove facts demonstrating that they are in the nature of the third-party intended beneficiaries of the relationship between the client and the attorney in order to recover in tort." *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. 1982); s*ee also Greyvas, Inc. v. Proud*, 826 F.2d 1560, 1563

(7th Cir. 1987).[2] Wisconsin courts have declined to extend legal malpractice liability to third parties, with limited exceptions that are not present in this case. *Beauchamp v. Kemmeter*, 625 N.W.2d 297, 299 (Wis. App. Ct. 2000). Thus, the choice of law is material to Plaintiffs' claims.

Illinois applies the "most significant contacts" test to choice-of-law disputes. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir.2 009) (citing *Westchester Fire Ins. Co. v. G. Heileman Brewing Company, Inc.*, 747 N.E.2d 955, 961 (Ill. App. Ct. 2001)). This test "involves balancing a number of factors, including the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile or place of business of each party; and the place where the relationship between the parties is centered." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (citing *Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 738 N.E.2d 964, 971 (Ill. App. Ct. 2000)).

Elling is a resident of New Mexico. Elling claims that he was injured by Defendants' failure to file a UCC financing statement in Delaware. The place where the injury occurred was New Mexico. DeWitt is a law firm located in Wisconsin. Hauck is an employee of DeWitt and a Wisconsin citizen. DeWitt was hired, in part, to assist Integrated with financial difficulties. Integrated borrowed funds from Elling and obtained a loan and grant from Wisconsin for Integrated to establish a lab within the state. The conduct causing the injury occurred in Wisconsin. Integrated was a Delaware corporation that qualified as a foreign corporation to do

---

[2] It is not clear that the exception in *Pelham* applies. Attorneys in Illinois are subject to limited liability in order "to protect the personal, highly confidential and fiduciary nature of the attorney-client relationship." *Schechter v. Blank*, 627 N.E.2d 106, 109 (Ill. App. Ct. 1993) (citing *Brocato v. Prairie State Farmers Insurance Association*, 520 N.E.2d 1200, 1201-02 (Ill. App. Ct. 1988)). An attorney "cannot have fiduciary responsibilities to third parties which may interfere with this duty to his client and leave him vulnerable to liability." *Id.* (citing *Gold v. Vasileff*, 513 N.E.2d 446, 448 (Ill. App. Ct. 1987)). The *Schechter* court held that the law only imposes a duty on an attorney to a third party where the primary purpose of the attorney-client relationship was to benefit that third party. *Id.* at 111. There is no evidence that the primary purpose of the relationships between Integrated and Defendants was to benefit Plaintiffs.

business in Illinois. The domiciles of the parties are New Mexico, Delaware, and Wisconsin. The parties' relationship was based on constructing the loan agreements and moving the company's operations to Wisconsin. The most significant contacts in this case are with Wisconsin. Under the Illinois choice-of-law analysis, Wisconsin law should apply.

*Attorney-Client Relationship*

To have a viable legal malpractice case, the plaintiff must prove four elements: "(1) [plaintiff] had a lawyer-client relationship with [defendant]; (2) [defendant] committed acts or omissions constituting negligence; (3) the negligence caused injury to [plaintiff]; and (4) the nature and extent of the injury." *Tallmadge v. Boyle*, 730 N.W.2d 173, 179 (Wis. Ct. App. 2007) (citing *Lewandowski v. Continental Cas. Co.*, 276 N.W.2d 284 (Wis. 1979)).

Defendant argues that there are no facts which would reasonably support an inference that an attorney-client relationship existed between Hauck and Elling. Elling had no direct communications with Hauck and only communicated directly with Sheridan. Hauck believed his work was solely for Integrated's benefit, in order for Integrated to obtain their loan. Defendants also argue there was no mutual consent to form an attorney-client relationship between Hauck and Elling. Plaintiffs state that because there was no formal representation agreement between Defendants and Integrated, it can be inferred that Elling was being represented informally by Defendants. Plaintiffs further claim that Hauck knew Elling was sending communications through Sheridan. And Plaintiffs argue that some of the actions performed by Hauck were for the sole benefit of Elling as the lender including: a lien search, revision of the note to place it on equal footing with other liens, and the preparation and filing of the UCC filing statements.

"Whether an attorney-client relationship is created depends upon the intent of the parties and is a question of fact." *In re Disciplinary Proceedings Against Kostich*, 793 N.W.2d 494, 497

9

(Wis. 2010). The knowledge of one party that the other is an attorney "coupled with legal advice being sought and provided, ordinarily is enough to establish the relationship." *Id.* at 497-98. Moreover, "the existence of a lawyer/client relationship is determined principally by the reasonable expectations of the person seeking the lawyer's advice." *Id.* at 498.

Hauck argues that he was solely retained by Integrated, and all work done was on their behalf. All communications between Hauck and Integrated occurred through Sheridan. (Def's SOF ¶ 9; Pl's SAF ¶ 14.) Sheridan asked Hauck to provide legal services relating to the aforementioned loans. (Def's SOF ¶ 11; Pl's SAF ¶ 12.) Elling never spoke directly with Defendants regarding these transactions. (Def's SOF ¶ 23.) Instead, Elling spoke with Sheridan regarding his loan to Integrated, and asked Sheridan to forward any documents regarding this loan to Elling. (Pl's SAF ¶ 15.) Hauck's client was clearly Integrated. Given the undisputed facts there was no reasonable expectation that Hauck was representing Elling.

In the alternative, Plaintiff argues that Elling was at least a third-party beneficiary of the work performed by Hauck. However, as previously stated, Wisconsin courts have generally declined to extend legal malpractice liability to third parties, with some limited exceptions which are not present under these facts. *Beauchamp v. Kemmeter*, 625 N.W.2d 297, 299 (Wis. App. Ct. 2000).

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [48] is granted. Judgment is entered in Defendants' favor, and the civil case is closed.

Date:    September 10, 2015

JOHN W. DARRAH
United States District Court Judge

10